UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Patsy Pate, | § | |
| Plaintiff, | § § § | |
| versus | § § | Civil Action H-13-326 |
| Curtis W. Hampton, et al., | § § § | |
| Defendants. | § | |

## Opinion on Summary Judgment

1.  *Introduction.*

    A driver hit another car and crashed into a ditch. As he walked from the wreck, a policeman asked him to stop and go to his patrol car. He went to the car, but he jumped the officer while he holstered his gun. The officer shot the driver after he continued to struggle with him. The driver died. The driver's mother and the executrix of his estate will take nothing from the officer.

2.  *Background.*

    Curtis W. Hampton is an officer of the Houston Police Department. At around 11:00 p.m. on Christmas, 2011, Hampton saw Blake A. Pate careen his car along Tidwell Road. Several cars drove off the road to avoid him. After hitting Laura Fields's car, he ricocheted into a ditch.

    As Hampton drove up to Blake's car, he saw that Blake had gotten out and was walking away. Hampton drove alongside Blake and asked him whether he was injured. Blake ignored him, so Hampton got out of his car and stood in front of Blake. Blake did not appear injured, but he looked through Hampton as if he was not there. Hampton thought he was on a hallucinogenic drug.

    Fields saw Hampton and yelled "That's the man who hit my car." Hampton said that he would help her as soon as he could.

At the same time, Blake started down the street again. Hampton put his hand on Blake's chest to stop him. Blake stopped after pushing against Hampton's hand. Hampton drew his 0.40-caliber Glock. He told Blake to walk to his patrol car. Blake walked back to the car with Hampton behind him.

As soon as Hampton holstered his pistol, Blake turned and moved towards Hampton with raised hands. Hampton drew and aimed at Blake. When he continued toward him, Hampton shot Blake's leg. Blake kept coming, so he shot Blake in the chest. Blake knocked Hampton into a ditch, and Hampton's bi-focal glasses fell off. He shot Blake three more times and stood. Blake had fallen and stopped moving. Blake was dead when paramedics arrived minutes later.

The medical examiner found three bullet wounds: (a) one through the front of his right leg, (b) one through his left-upper chest, and (c) one through his lower neck. The examiner said that the chest wound killed Blake. Hampton says that one of his last shots wounded Blake's neck. In the examination, Blake tested positive for alcohol, marijuana, and a cough medicine with psychological effects similar to phencyclidine – PCP – when enough of it is ingested.

Patsy Pate is Blake's mother. She is suing Hampton in his personal and official capacities. She says that Hampton acted unreasonably when he shot Blake.

3. *Shooting.*

Twenty people saw Hampton shoot Blake. Their stories are consistent. Pate disagrees with the witnesses; however, she was not at her son's wreck, and she has no facts to support her disagreement and its legal conclusions.

Pate says that one witness only partially corroborates the other witnesses. This is true and unremarkable. While one witness did not report a few details that the others had, what she does say is consistent with the parallel sections of the other witnesses. Limited corroboration is not contradiction.

Pate also says that Blake's chest wound shows that Hampton shot him while his waist was bent. Blake's chest wound reflects that he kept coming toward Hampton after he shot him in the leg. Whether Blake was standing straight or bent does not alter the elements of the event. Blake had not complied with the officer, then complied until the officer was distracted, jumped him, got shot in the leg, and kept coming.

The recitation of the uncontradicted facts manifests that Hampton acted reasonably. Shooting was not his first response. He tried to work with Blake. Only when – after Blake's plowing down the street, crashing, and resistance – Blake lunged and hit Hampton did the officer defend himself.

Hampton could not threaten to use his Taser© because Blake was wearing thick winter clothing, so he drew his pistol. Blake complied until he could get the advantage on Hampton. After the first tussle, Hampton shot Blake in the leg, a low-level application of firepower. Blake kept coming so Hampton shot him through the chest. Although that wound became mortal, it did not immediately stop Blake. Next, Hampton missed twice then hit him in the neck. By then the chest wound took effect, and he fell.

4. *Character Assault.*

Instead of addressing the facts of the event itself, the plaintiff has poured through Hampton's police and personal life to denigrate him. She found nothing cogent to anything about this arrest and shooting.

The worst event she could find is: Eight years before Hampton shot Blake, he shot at another person. At around midnight late in November of 2003, Hampton and his partner were investigating an assault at an apartment building. They knocked on the suspect's door. The suspect opened it, but he did not answer the officers' questions before closing it. The officers retreated to a stairwell and called for help.

The suspect shot through the door. He then came out and pointed a pistol at the officers. Hampton shot at him, and he shot back before retreating to his apartment. Hampton shot eleven times, but it is unknown if he hit the suspect. Another team of officers broke into the apartment and arrested the suspect, who had two bullet wounds. Assuming the wounds were from Hampton's pistol, they were reasonable. Returning fire is not *always* reasonable, but it was here. Even if this incident had been unreasonable, it was under different circumstances eight years ago.

5. *Training and Policy.*

Pate raises the usual claims that poor police training and policies were responsible for Blake's death. She has no data to suggest that Blake was mentally impaired from natural causes. He was not driving or fighting because of an involuntary, organic condition. He had chosen to make himself dangerous to the public and himself. That choice had unfortunate consequences.

Hampton had taken seven courses on how to manage deranged people. The department was not aware of a fact that would have suggested that Hampton needed additional skills in crisis management. The department had no policy with defects that are causally related to Hampton's action that Christmas night – assuming Hampton were to have done something wrong.

6. *Clark.*

Pate proffers the report of Roger Clark, a retired Los Angeles County deputy sheriff, in support of her claims that Hampton acted unreasonably and that Houston had defective policies.

Clark's report and the opinions it contains are inadmissible. Clark's factual recitation of the incident relies exclusively on the account of one witness, among twenty. Anedra Duncan's account is the briefest of the lot. It omits major portions recounted by other witnesses and contains fewer details. Clark's exclusive reliance on Duncan is a deliberate distortion leaving his opinions untethered to the facts of this case.

His conclusions about Hampton's conduct are illustrative. Clark says that Hampton did not inquire of Blake's health initially. The first thing Hampton did was to ask whether Blake was alright. Clark concludes that that did not happen because it is not in Duncan's account; unfortunately for Clark's agenda, she arrived after Hampton escorted Blake to his car.

Ten pages of Clark's report are devoted to recounting unrelated incidents and Hampton's history as an officer – things completely unrelated to this shooting. Clark waxes about today's universe of law enforcement, but he cannot deliver cogent analysis or conclusions about Houston's policy or procedure. He never addresses Hampton's additional training but says only that Houston should have identified him as a "ticking-time-bomb" based on his conduct. If Hampton had been branded in any way – even perfect – it would not have kept Blake from jumping him. Clark's sloganeering is no more connected to the known facts than his opinions of facts that he did not like.

Clark's opinions are conclusory, untethered to the facts, and often wrong. His opinions are not persuasive, not cogent, and not admissible.

7. Conclusion.

Hampton was trained to manage difficult and deranged people. He used this training with Blake. Hampton was non-confrontational and only increased his presence – like drawing his pistol – in response to Blake's acts. Blake was not susceptible to oral or physical persuasion; he chose to attack the officer.

Patsy Pate as Blake's mother and as his executrix or admisintrator will take nothing from Hampton or the City of Houston, Texas.

Signed on January 13, 2015, at Houston, Texas.

Lynn N. Hughes
United States District Judge